IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| ROBERT SPARKS, | § | |
| | § | |
| Petitioner, | § | |
| | § | |
| v. | § | Civil Action No. 3:12-CV-469-N |
| | § | (Death Penalty Case) |
| WILLIAMS STEPHENS, | § | |
| | § | |
| Respondent. | § | |

**MEMORANDUM OPINION AND ORDER
GRANTING MOTION TO STAY AND ABATE PROCEEDINGS**

Petitioner Robert Sparks has filed an opposed motion to stay proceedings and hold them in abeyance ("Motion," doc. 18). Respondent has agreed to the motion to stay these proceedings in his reply to this motion ("Reply", doc. 27). The Court finds that the agreed stay should be **GRANTED**.

### I. PROCEDURAL HISTORY

On December 11, 2008, Sparks was convicted and sentenced to death for the murder of his two stepsons. *State v. Sparks*, No. F08-01020-VJ (Crim. Dist. Ct. 3, Dallas County, Texas). The conviction and sentence were affirmed on direct appeal. *Sparks v. State*, No. AP-76,099, 2010 WL 4132769 (Tex. Crim. App. Oct. 20, 2010), *cert. denied*, 131 S. Ct. 2152 (2011). Sparks applied for state habeas relief and was granted an evidentiary hearing, but relief was denied on December 14, 2011. *Ex parte Sparks*, WR-76,786-01, 2011 WL 6293529 (Tex. Crim. App. 2011), cert. denied, 133 S. Ct. 526 (2012).

On February 14, 2012, Sparks filed a motion for appointment of counsel in these proceedings (doc. 1). Lead counsel was appointed for Sparks on March 27, 2012 (doc. 3) and co-counsel was

appointed on May 8, 2012 (doc. 4). On September 7, 2012, Sparks and Respondent filed a joint motion for a scheduling order (doc. 6), which was partially granted on November 9, 2012 (doc. 8). This scheduling order authorized a skeletal petition and an amended petition to be filed by Sparks, followed by the answer of Respondent, and a reply by Sparks. Sparks filed his amended petition ("Petition," doc. 19) with his motion to stay and abate these proceedings (doc. 18) on June 10, 2013. In his motion and certificate of conference, Sparks stated that Respondent opposed the sought stay and abatement of these proceedings. Respondent's answer ("Answer," doc. 18) and reply to the motion to stay and abate (doc. 27) that he filed on November 4, 2013, however, agrees to the requested stay. Sparks replied to Respondent's answer and to Respondent's reply to Sparks's motion to stay and abate on January 3, 2014 (doc. 32), noting that the motion for stay is now agreed.

## I. UNEXHAUSTED CLAIMS

Sparks requests that this Court stay and abate these habeas-corpus proceedings so that he may return to the state court to present an unexhausted claim that, "during its punishment presentation, the State's expert, Mr. A.P. Merrilat, testified falsely concerning 'the likelihood or opportunities to be violent inside the penitentiary.'" (Mot. at 1 (quoting from the state court record).) Although the certificate of conference to the Motion stated that it was opposed, Respondent agreed to the requested stay in his reply: "Although the Director believes that the state court will procedurally default this claim, in abundance of caution and because of the related and defaulted ineffective assistance of counsel claim, the Director agrees to stay and abate this case while Sparks pursues remedies in state court." (Reply at 1.) And although Sparks's motion to stay mentions only one claim, Respondent's agreement would include another claim: the ineffective assistance of trial counsel. The Court will consider both claims as encompassed by the Motion.


## II. STANDARD

In *Rhines v. Weber*, 544 U.S. 269 (2005), the Supreme Court held that a district court has discretion to stay a petition containing unexhausted claims so that the habeas petitioner may return to state court to exhaust such claims in limited circumstances.

> Because granting a stay effectively excuses a petitioner's failure to present his claims first to the state courts, stay and abeyance is only appropriate when the district court determines there was good cause for the petitioner's failure to exhaust his claims first in state court. Moreover, even if a petitioner had good cause for that failure, the district court would abuse its discretion if it were to grant him a stay when his unexhausted claims are plainly meritless.

*Id.*, at 277 (citing 28 U.S.C. § 2254(b)(2)). The Supreme Court further cautioned against the undue refusal to allow development of such claims.

> On the other hand, it likely would be an abuse of discretion for a district court to deny a stay and to dismiss a mixed petition if the petitioner had good cause for his failure to exhaust, his unexhausted claims are potentially meritorious, and there is no indication that the petitioner engaged in intentionally dilatory litigation tactics.

*Id.*, at 278. Extra care is also appropriate in the disposition of this case in which the death penalty has been assessed, so that any potentially meritorious claim may be properly considered before an execution is allowed to proceed and that any unwarranted delay is avoided. *See Rhines*, 544 U.S. at 277-78 (expressing caution about the special danger of delays in death-penalty cases). This Court must determine (1) whether good cause exists for Petitioner's failure to exhaust, (2) whether the unexhausted claims are plainly meritless, and (3) whether Petitioner intentionally failed to bring these claims earlier in order to prolong this litigation. *See Williams v. Thaler*, 602 F.3d 291, 309 (5th Cir. 2010). Respondent's response in agreement makes this task easier.

### III. ANALYSIS

#### A. *Good Cause*

Sparks claims that good cause exists to excuse the procedural default in that "he could not have presented this evidence to the state courts because he could not reasonably be expected to know that Merillat's testimony was false, the state failed to bring the false testimony to his attention at any stage of the proceedings below, and in the alternative, because his state habeas counsel failed to provide effective assistance of counsel by not raising the meritorious claim." (Mot. at 5.) While Respondent agrees that justice would be served by allowing these claims to now be considered by the state courts, the meaning of "good cause" under *Rhines* is not settled.

In his concurring opinion in *Rhines*, Justice Stevens noted that " 'good cause' for failing to exhaust state remedies more promptly . . . is not intended to impose the sort of strict and inflexible requirement that would 'trap the unwary pro se prisoner.' " *Rhines*, 544 U.S. at 279 (Stevens, J., concurring) (quoting *Rose v. Lundy*, 455 U.S. 509 (1982)). In discussing this term, this Circuit has determined that the Supreme Court did not intend it to mean "good excuse" in the technical sense, but rather "good cause" in the equitable sense. *See Ruiz v. Quarterman*, 504 F.3d 523, 529 n.17 (5th Cir. 2007). The United States Court of Appeals for the Ninth Circuit has held that "good cause" under *Rhines* is less stringent than their "extraordinary circumstances" standard, *Jackson v. Roe*, 425 F.3d 654, 661-62 (9th Cir.2005), but that a habeas petitioner's "impression" that his counsel had exhausted an unexhausted claim would still not constitute "good cause" for failure to exhaust that claim. *See Wooten v. Kirkland*, 540 F.3d 1019, 1024 (9th Cir. 2008). The United States Court of Appeals for the First Circuit has held that "ignorance of the law does not constitute good cause," *Josselyn v. Dennehy*, 475 F.3d 1, 5 (1st Cir. 2007), and that a habeas petitioner's strategic decision

to omit some claims from his state court application for leave to obtain further appellate review could not amount to "good cause" under *Rhines*. *See Clements v. Maloney*, 485 F.3d 158, 169-71 (1st Cir. 2007). Pointing to a lack of "consensus among federal courts on what constitutes 'good cause' within the meaning of *Rhines*," one court has concluded that "it is analogous to the external 'cause' required to excuse a procedural default." *Brawner v. Epps*, 2008 WL 1745541 (N.D. Miss., Apr. 11, 2008) (citing *Coleman v. Thompson*, 501 U.S. 722, 755 (1991) (requiring petitioner to demonstrate some "objective factor external to the defense" that made it impossible to bring the claim earlier in State proceedings)). This appears to be a more stringent standard than applied by most courts.

While this more stringent case-and-prejudice standard would normally exclude claims that were not discovered merely because his habeas counsel failed to conduct an adequate investigation, *see Johnson v. Puckett*, 176 F.3d 809, 816 (5th Cir. 1999), the Supreme Court has recognized as "cause" for procedural default of ineffective-assistance-of-trial-counsel claims that state habeas counsel was ineffective for not presenting the claim to the state courts. *Martinez v. Ryan*, 132 S. Ct. 1309 (2012), applied to Texas cases in *Trevino v. Thaler*, 133 S. Ct. 1911 (2013). If the ineffective assistance of state habeas counsel qualifies as cause under *Martinez*, it may well constitute cause under *Rhines* as well.

Further, Petitioner also alleges *Brady* violations. The prosecution's withholding of *Brady* evidence from the petitioner's attorneys qualifies as a "substantial reason for the default that is external to [the petitioner]." *Jamison v. Collins*, 291 F.3d 380, 386 (6th Cir.2002). Therefore, even under the more stringent standard, Petitioner's allegations could support a finding of good cause.

### B. *Not Plainly Meritless*

In his unexhausted claim of perjured testimony, Sparks claims that the State's expert Merillat misled the jury about the level of classification he would receive if sentenced to life in prison, indicating a less secure and less restrictive incarceration. Sparks points out the level of disagreement between defense counsel and the State over this issue, and the jury's reliance on this testimony by sending out multiple notes inquiring about Merillat's testimony. (Pet. at 64-70.) Sparks asserts that the presentation of this false evidence violated his due process rights (Pet. at 70-78), and that his trial counsel did not discover the falsity because the State suppressed the truth about this testimony that would have shown it to be false. (Pet. at 78-80.) In the alternative, Sparks argues that his trial counsel was ineffective in failing to investigate and present evidence showing that Merillat's testimony was false if this Court "believes Merillat's false testimony would have been discovered through the use of due diligence." (Pet. at 83.) Therefore, these claims alternatively present different ways that relief may be granted.

This Court previously granted an agreed stay and abatement on similar claims in another case, *see Murphy v. Thaler*, No. 3:10-cv-00163-N (N. D. Tex., June 8, 2010) (Mem. Op. & Order Granting Abatement), that the Texas Court of Criminal Appeals later dismissed as an abuse of the writ without considering their merits after determining that the claims could have been raised in the earlier state proceedings. *See Ex parte Murphy*, WR-70,832-02, 2012 WL 982945 (Tex. Crim. App. 2012). If consideration of the merits of either of these claims in a subsequent state habeas application would also be barred by the Texas abuse-of-the-writ doctrine, these claims would be considered in this Circuit to be plainly meritless under the *Rhines* analysis. *See Neville v. Dretke*, 423 F.3d 474, 480 (5th Cir. 2005). While this Court would not grant a futile stay, it appears that

6

issues exist regarding whether the false nature of the testimony could reasonably have been discovered earlier through the exercise of due diligence, or if it could, whether state habeas counsel was ineffective in failing to discover and present the ineffective assistance of trial counsel claim earlier. (Reply at 1, 3.) This latter claim may avoid a procedural bar in this court if it falls within the exception created in *Martinez*, that was issued at about the same time as the disposition of *Murphy* and made applicable to Texas cases a year later in *Trevino*.

### C. *Not Dilatory*

Respondent does not claim that Petitioner has engaged in any dilatory tactics. Instead, Respondent agrees to the stay and abatement of these proceedings, which will result in some delay so that the unexhausted claims may be properly presented to and considered by the state courts. There is no allegation that the petitioner engaged in intentionally dilatory litigation tactics and it appears that justice is served by granting the motion to stay and abate these proceedings so that these claims may be fully and properly considered by the state courts.

### IV. CONCLUSION

Petitioner's allegations, if true, could support the grant of habeas relief. He has identified alternate claims that, when fully developed, may prove these factual allegations, and has shown good cause for failing to exhaust these claims in the state courts. Respondent has agreed to the relief requested in this motion, asserts that the state court is the proper forum for the resolution of issues pertaining to these claims, and requests time limits for Sparks to present his claim and return to this Court. (Reply at 3.) Therefore, the motion to stay and abate these proceedings is granted subject to the following schedule.

## V. SCHEDULE

*Rhines* counsels that "[e]ven where stay and abeyance is appropriate, the district court's discretion in structuring the stay is limited by the timeliness concerns reflected in AEDPA." *Rhines*, 544 U.S. at 277. *Rhines* therefore instructs district courts to "place reasonable time limits on a petitioner's trip to state court and back." *Id.* at 278. Accordingly, the court orders Petitioner to file a habeas application in state court within 45 days of the date of this memorandum opinion and order, and, unless he obtains habeas relief in state court, to return to this court within 45 days after he exhausts his state court habeas remedies.

For the reasons explained, Petitioner's motion to stay and abate these proceedings contained within his brief in support of his petition is **GRANTED**, these proceedings are stayed and abated while Petitioner pursues his state habeas remedies in accordance with this memorandum opinion and order. During the pendency of this stay, this civil action will remain closed for statistical purposes.

**SO ORDERED**.

SIGNED January 13, 2014.

_____
David C. Godbey
United States District Judge