UNITED STATES DISTRICT COURT
FOR THE NOTHERN DISTRICT OF TEXAS
DALLAS DIVISION

**Robert Sparks,**
　　**Petitioner,**

*v.*

**Lorie Davis,**
　　**Director, TDCJ.**

3:12-CV-469-N

## MOTION FOR FUNDING FOR NEUROPSYCHOLOGIST

Robert Sparks, who is on Texas's death row and has a current execution date of September 25, 2019,[1] requests funding for the services of Dr. Shawanda Williams-Anderson,[2] a neuropsychologist, to evaluate whether or not he is intellectually disabled and therefore his execution forbidden by the Eighth Amendment.[3] Undersigned counsel were appointed by this Court pursuant to 18 U.S.C. § 3599 and have a duty to continue representing Mr. Spark's "throughout

---

[1] The Order Setting Robert Sparks' execution date is attached as Appendix A.
[2] Dr. Anderson's resume is included as Appendix F.
[3] *See Atkins v. Virginia*, 536 U.S. 304 (2002) (Executions of mentally retarded people are "cruel and unusual punishments" prohibited by the Eighth Amendment.); *Hall v. Florida*, 572 U.S. 701 (2014) (state rule foreclosing further exploration of a capital defendant's intellectual disability if his IQ score was more than 70, created unacceptable risk that persons with intellectual disability would be executed, in violation of Eighth Amendment.); *Moore v. Texas*, 137 S. Ct. 1039 (2017) (*Briseno* factors adopted by Texas Court of Criminal Appeals, for evaluating an *Atkins* claim, are based on superseded medical standards that create an unacceptable risk that a person with intellectual disabilities will be executed in violation of the Eighth Amendment).

1

every subsequent stage of available judicial proceedings. . ." 18 U.S.C. § 3599 (e).[4] Based upon Mr. Spark's past IQ testing results and a wealth of evidence presented at Mr. Spark's trial, as well as the recent Supreme Court opinion which forced Texas to change its jurisprudence concerning intellectual disability, Sparks can establish that the services of a neuropsychologist "are reasonably necessary for the representation of the defendant" so that funding should be granted.

## I. THE CURRENT PROCEDURAL POSTURE OF THESE PROCEEDINGS.

Mr. Sparks has not been dilatory in requesting this funding, but rather, was hoping to avoid piecemeal litigation by waiting for the United States Supreme Court to rule on his currently pending petitioner for writ of certiorari prior to requesting funding from this Court. Recent circumstances necessitate a change in prior plans.

This Court entered its finding its final judgment on Mr. Sparks' initial habeas proceedings on March 27, 2018. Mr. Sparks timely requested a certificate of appealability from the Fifth Circuit, and the Fifth Circuit issued its opinion on December 4, 2018. On May 6, 2019, Mr. Sparks timely filed a petition for writ of certiorari. *See* Supreme Court Doc. no. 18-9227, Petition for Writ of Certiorari. On the date Mr. Sparks filed his petition there was no execution date in place. On June 3, 2019, the State of Texas, represented by the Attorney General's Office, requested an extension of time to file its response. *See* Doc. no. 18-9227, Motion to Extend Time. That request was granted on June 5, 2019. On June 11, 2019, the Dallas County District Attorney's office, at the request of the Attorney General's Office, filed a motion to set an execution date, which was granted on June 25, 2019. *See* Appendix A, Order Setting Execution Date and Warrant of Execution. On July 10,

---

[4] "Under § 3599(e), a lawyer appointed to represent a capital defendant is obligated to continue representing his client until a court of competent jurisdiction grants a motion to withdraw." *Battaglia v. Stephens*, 824 F.3d 470, 474 (5th Cir. 2016).

2019, the State of Texas filed its brief in opposition before the Supreme Court. *Id.* Mr. Sparks has requested a stay of execution from the Supreme Court, but that motion has not been ruled upon.

Sparks must now prepare to file a subsequent state writ of habeas corpus as soon as the Supreme Court rules on his petition for writ of certiorari. He cannot file a subsequent state habeas proceeding until after the Supreme Court rules because Texas will "automatically dismiss writ applications when the applicant also has a writ pending in federal court that relates to the same conviction," unless the applicant has been granted a stay and abet by a federal court to return to state court. *See Ex parte Soffar,* 120 S.W.3d 344, 345 (Tex. Crim. App. 2003). However, because the State of Texas set an execution date at the same time his case was pending before the Supreme Court, and because the Supreme Court might not rule until just days before currently scheduled execution date, Mr. Sparks must be proactive in preparing for a subsequent state habeas application.

Importantly, based upon recent changes in the law, it is likely that Sparks will be able to prove he is intellectually disabled if granted funding for a neuropsychologist.

## II.  MR. SPARKS' REQUEST FOR FUNDING MEETS § 3559'S REQUIREMENTS.

In addition to requiring undersigned counsel to continue representing Mr. Sparks "throughout every subsequent stage of available judicial proceedings" 18 U.S.C. § 3559 authorizes this Court to provide counsel with expert services that are "are reasonably necessary for the representation of the defendant." 18 U.S.C. § 3599 (f). The Supreme Court recently discussed the meaning of § 3599 in *Ayestas v. Davis*, 138 S. Ct. 1080 (2018). In *Ayestas,* he Court explained that District Courts should determine "whether a reasonable attorney would regard the services as sufficiently important" when deciding if authorization for funding should be granted.

3

*Id.* at 1093.  The Court explained that "[a] natural consideration informing the exercise of that discretion is the likelihood that the contemplated services will help the applicant win relief." *Id.* at 1094.  Mr. Sparks suggests that the assistance of a neuropsychologist is necessary to his case because *if* he is considered intellectually disabled then his execution would be constitutionally impermissible, and because prior records, when viewed against current standards for intellectual disability, strongly suggest Mr. Sparks is intellectually disabled.

Of course, it is important that Mr. Sparks will be able to pursue an intellectual disability claim if supported by the facts, and recent changes in the law ensure that he can indeed present the claim to the state courts.  Sparks has previously filed two state application for writ of habeas corpus; one denied in 2011 and one denied, after this Court granted a stay of the federal proceedings, in 2014.  *Ex Parte Sparks*, 2011 WL 6293529 (2011); *Ex parte Sparks*, 2014 WL 2002211 (Tex. Crim. App. 2014).  Neither of those applications included a claim of intellectual disability.  And, like the federal system, Texas has a subsequent writ bar that generally requires dismissal of subsequent applications absent a few circumstances.  Tex. Code Crim. Proc. art. 11.071 § 5.  However, one of those circumstances applies in Sparks' case.

Texas permits a subsequent application if it identifies claims that "have not been and could not have been presented previously in a . . . previously considered application filed under this article . . . because the factual or legal basis for the claim was unavailable on the date the applicant filed the previous application."  *Id* § 5(a)(1).  The current legal basis of an intellectual disability claim was not previously available to Mr. Sparks the 2017 Supreme Court case *Moore v. Texas* fundamentally altered Texas's intellectual disability framework. 137 S. Ct. 1039 (2017).

4

Prior to *Moore*, Texas adhered to the judicially created *Briseno* test for identify intellectual disability. *Id.* at 1046-47.[5] Using the *Briseno* test, Texas courts could reject as unreliable certain IQ tests, and (important to Mr. Sparks case) the courts were permitted to "discount[] the lower end of the standard-error range associated with those scores." *Id.* at 1047. Essentially, this permitted Texas courts to discount IQ scores which fell between 71-75, a practice found unconstitutional in *Hall v. Florida*, 572 U.S. 701 (2014). *Id.* at 1048-1050. The *Briseno* test also improperly credited adaptive strengths as opposed to looking at adaptive deficits, and the judicially created *Briseno* factors were not derived by the relevant medical community. *Id.* at 1050-52. *Moore* informed us that states must look to the current medical standards when determining whether or not a person suffers from intellectual disability and therefore cannot be executed under the 8th Amendment.

Texas recognizes that *Moore* provides Texas Capital Inmates with a new legal basis for relief, and therefore, that Texas prisoners who are intellectually disabled may pursue subsequent habeas applications in Texas courts. *Ex parte Guevara*, NO. WR-63,926-03, 2018 WL 2717041, (Tex. Crim. App. 2018). Based on the facts presented *infra* Sparks simply request the resources necessary to pursue a subsequent state habeas application in his case.

### III. A NEUROPSYCHOLOGIST IS REASONABLY NECESSARY IN THIS CASE.

Ample evidence was presented at trial showing that Sparks is likely intellectually disabled based upon the current medical standards. However, during the trial which took place in 2008, Sparks would have been hampered by Texas' limited view of intellectual disability. For example, during a pretrial motion hearing

---

[5] *Ex parte Briseno*, 135 S.W.3d 1 (Tex. Crim. App. 2004), abrogated by Moore v. Texas, 137 S. Ct. 1039, 197 L. Ed. 2d 416 (2017), and abrogated by Ex parte Moore, 548 S.W.3d 552 (Tex. Crim. App. 2018).

5

the defense explained to the trial judge that they would not be presenting evidence on their motion regarding "mental retardation." 35 RR at 16. A review of the motion itself shows why: based upon Texas law at the time the defense team felt it could not purse an intellectual disability claim unless Mr. Sparks IQ was 70 or less. CR at 151-52. But Sparks IQ had been tested and showed a full-scale IQ of 75. *See* Defendant's Ex. 17, p. 10; included as Appendix B. Texas law might also have explained why Dr. Kristi Compton explained Sparks was not "in the mentally retarded range."[6]

However, the Supreme Court explains that courts must use the most up-to-date information in evaluating intellectual disability, and the Supreme Court looks to the "DSM-5."[7] At the time of trial Sparks team would have been relying upon the DSM-4. *See* 39 RR at 42. Based upon the DSM-5 the Supreme Court instructs that "where an IQ score is close to, but above, 70, courts must account for the test's 'standard error of measurement.'" *Moore v. Texas*, 137 S. Ct. 1039, 1049, 197 L. Ed. 2d 416 (2017). The DSM-5 instructs that criterion A for intellectual disability relates to IQ score, and that scores between 65-75 are sufficient to trigger an intellectual disability analysis. *See* Appendix C, page, 37; *see also Hall*, 572 U.S. at 713 (2014) (using the same range of error). Sparks IQ of 75 is therefore sufficient to trigger the full intellectual disability analysis. *See Moore*, 137 S.Ct. at 1049. Indeed, the Sparks IQ is likely lower than 75 because the test is over 11 years old, and the DSM-V instructs that out-of-date test often relate to overly high scores, a phenomenon known as the Flynn Effect. DSM-V at 37. In any event, Sparks IQ score of 75 necessitates a full intellectual disability analysis.[8]

---

[6] She also incorrectly stated his IQ was 78, not 75, which makes a difference.
[7] This stands for the Diagnostic and Statistical Manual of Mental Disorders (2013).
[8] *Hall v. Florida*, 572 U.S. 701, 723 (2014) ("This Court agrees with the medical experts that when a defendant's IQ test score falls within the test's acknowledged and inherent margin of error, the defendant must be able to present additional evidence of intellectual disability, including testimony regarding adaptive deficits.")

6

The second criterion for intellectual disability is deficits in adaptive functioning. *Id.*; *see also* DSM-5 at 37. This relates to how well a person meets community standards of personal independence and social responsibility. DSM-5 at 37. Courts must consider the conceptual domain (related to competence in things like reading, writing, math, reasoning), the social domain (related to awareness of others thoughts, feelings and experiences, and empathy), and the practical domain (learning self-management across life settings, personal care, job responsibility, money management). *Id.* Impairment in a single domain (conceptual, social, or practical) means a person meets criterion B. *Id* at 37-38.

The trial record alone establishes glaring adaptive deficits:

- Sparks mom was not sure if he was mentally retarded. 40 RR at 133.
- Sparks school records, entered as State's Exhibit 98, show:[9]
    - In the 9th grade Sparks was in all special education classes (noted "SE"). He barely passed those classes.
    - Sparks had to repeat the 9th grade, and then he dropped out of school.
    - In the 5th grade sparks ranked in the bottom 1-2% for every category of educational achievement testing. In the 8th grade Sparks ranged between the 4th and 9th percentile for every tested category.
    - In the first semester of the 4th grade Sparks received an "F" in 5 of his 8 classes.
    - In the 8th Grade Sparks performed at the 5th grade level for vocabulary and reading, and the 4th grade level for language and math.
- Additional School Records introduced as Defense Exhibit 19 show:[10]

---

[9] See Appendix D.

[10] Appendix E.

7

- - In his last semester in school (9th Grade) Sparks only grade above a 50% was in study hall.
  - In the Ninth Grade (for the second time) Sparks had a 5th grade vocabulary and reading comprehension and a fourth-grade language skillset.
- Sparks shows very low verbal fluency, and poor auditory memory. 40 RR at 202.
- Sparks "problem-solving is miserable. . ." 40 RR at 207.
- Sparks was impulsive and failed to plan ahead, he was also aggressive. 40 RR at 212. He failed to sustain consistent work behavior or stick with financial obligations. *Id.* He was indifferent to others. *Id.* at 215.
- Sparks school career was described as failing everything and then going to special ed. 41 RR at 9.
- Sparks is impulsive and lacks empathy. 41 RR at 23.
- Sparks also suffered from antisocial personality disorder, which is linked to having run-ins with the law and a lack of empathy. *Id.* at 197.
- The previous Neurological evaluation shows:
  - A full scale IQ of 75.
  - An ability to identify words of an 8th grader, and ability to calculate at the sixth grade level, with "borderline" mental arithmetic.
  - Learning and memory testing showed he often fell in the bottom 5% of the population on various tests.
  - Sparks has poor mental speed.

It seems clear that Sparks shows signs of multiple adaptive deficits, specifically in the social and conceptual domains, but the assistance of a neuropsychologist is necessary to confirm this hypothesis based upon the most up to date science.

8

The final criterion involves the onset of deficits during the developmental period, which is certainly suggested by Sparks performance in elementary school. DSM-V at 37. Mr. Sparks appears to meet all three criteria for intellectual disability, and if the three criteria are met, then we must make the intellectual disability diagnosis. DSM-V at 39.

It is also interesting that comorbidity is common (i.e., other mental disorders) in persons diagnosed with intellectual disability. DSM-V at 40. The most common co-occurring mental disorders include: depressive and bipolar disorders, anxiety disorders, and it is also common to exhibit aggression and disruptive behaviors. 40. Once again, Mr. Sparks fits the bill:

- Sparks suffers from severe mental illness. 39 RR at 39; 40 RR at 209. He is a delusional psychotic. 40 RR at 232.
- Sparks was diagnosed as psychotic and suffered from delusions. 40 RR at 193-96.
- Authorities in Dallas had diagnosed Sparks with schizo-affective disorder. *Id.* at 199.
- Sparks was paranoid believing people were following, would talk to himself, and his family believed he had mental problems. 39 RR at 157-62. He nailed the windows shut in his house, thought his family was trying to set him up, and though this family was trying to poison him. 40 RR at 51-55, 40 RR at 117-18.
- Sparks has been diagnosed with depression. 41 RR at 15.
- In jail, Sparks was kept on the wing for inmates taking psychiatric medicine. 39 RR at 178-79.
- Sparks family has a long history of mental illness. 40 RR at 112; 40 RR at 152-157.

9

Mr. Sparks has all of the warning signs for a person suffering from intellectual disability, but at the time of his trial the State of Texas had created its own definition of intellectual disability which likely precluded relief on this basis. Texas' former approach has now been discredited by the United States Supreme Court. It is likely that Sparks looming execution will offend the constitution, but only a qualified mental health professional employing the most up to date science can determine if Sparks is indeed intellectually disabled. For that reason Mr. Sparks, through undersigned counsel, requests this court to authorize funding in the amount of $5,000 so that Dr. Anderson can evaluate Mr. Sparks for intellectual disability. This is a necessary expense so that Sparks can pursue a subsequent sate writ of habeas corpus.

## IV. CONCLUSION

Undersigned counsel respectfully requests this Court for authorization of up to $5,000 for the services of Dr. Williams-Anderson. This fee would cover a review of relevant records, a clinical interview with Mr. Sparks, testing and test interpretation, and report writing relevant to all testing. Mr. Sparks requests that this Court consider this motion and order that sufficient funds be provided so that a competent expert can be retained to ensure that Mr. Sparks pending execution is carried out in accordance with State and Federal Law.

Respectfully submitted,

/s/ Jonathan Landewrs
Jonathan Landers
TBN 24070101
917 Franklin, Ste. 300
Houston, Texas  77002
Tel. (713) 685-5000
Fax. (713) 513-5505

10

        Seth Kretzer
        Law Offices of Seth Kretzer
        440 Louisiana Street; Suite 200
        Houston, TX 77002
        seth@kretzerfirm.com

        [Tel.] (713) 775-3050
        [Fax] (713) 224-2815

**ATTORNEY FOR DEFENDANT**

### CERTIFICATE OF CONFERENCE

On July 26, 2019, Ellen Stewart Klein, attorney for Lorie Davis, verified that she is opposed to this motion.

        /s/ Jonathan Landers

### CERTIFICATE OF SERVICE

A copy of this motion is being sent to Ellen Stewart Klein, Attorney for Lorie Davis, via the ECF system.

        /s/ Jonathan Landers

11