IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| ROBERT SPARKS, | § | |
|     Petitioner, | § | |
| | § | |
| v. | § | **No. 3:12-CV-469-N** |
| | § | |
| LORIE DAVIS, Director, | § | |
| Texas Department of Criminal Justice, | § | |
| Correctional Institutions Division, | § | |
|         Respondent's. | § | |

**RESPONDENT'S RESPONSE IN OPPOSITION TO
PETITIONER'S REQUEST FOR FUNDING FOR EXPERT
ASSISTANCE UNDER 18 U.S.C. §3599(e)**

Petitioner Robert Sparks is a Texas state inmate who unsuccessfully sought federal habeas relief under 28 U.S.C. § 2254 from his capital murder conviction and death sentence. The state trial court set Sparks's execution for September 25, 2019. Sparks now seeks funding pursuant to 18 U.S.C. § 3599 for the services of Dr. Shawanda Williams-Anderson, a neuropsychologist to evaluate whether Sparks is intellectually disabled. Mot. Fund., ECF No. 66, at 1. For the reasons set out below, the Director opposes his funding request.

I.    **Federal Funding is Not Justified for State Prisoner's Pursuit of Relief in a Subsequent State Writ Application.**

Supreme Court precedent precludes Sparks's request here. He seeks funding for expert assistance to facilitate the filing of a subsequent state writ application pursuant to Article 11.071 § 5 of the Texas Code of Criminal Procedure. But *Harbison v. Bell*, 566 U.S. 180 (2009), explicitly rejected the notion that §3599(e) permits federal funding for state habeas proceedings. *Harbison* held that "§3599 authorizes federally appointed counsel to represent their clients in state clemency proceedings and entitles them to compensation for that representation." 556 U.S. at 194. The Court reasoned that the statute's directive that counsel "shall represent the defendant throughout every subsequent state of the available judicial proceedings, including … all available post–conviction process" contemplated that counsel's representation would continue to "those judicial proceedings transpiring 'subsequent' to her appointment." *Id*. at 188. The Court made clear, however, that its holding was limited and dictated by the plain language of the statute. *Id*. at 185,188–190. Specifically, in response to the Government's concern that authorizing appointed counsel for state clemency proceedings would require federally funded counsel to represent a client in any state habeas proceedings occurring after counsel's appointment, the Court responded:

> But, as we've previously noted, subsection (c) authorizes counsel to
> represent her client in "subsequent" stages of available judicial

> proceedings. State habeas is not a stage "subsequent" to federal
> habeas. Just the opposite: Petitioner's must exhaust their claims
> in state court before seeking federal habeas relief. That state post–
> conviction litigation sometimes follows the initiation of federal
> habeas because a petitioner has failed to exhaust does not change
> the order of proceedings contemplated by the statute."

*Id.* at 189–90 (internal citations omitted). *Harbison* could not be clearer that

"[s]tate habeas is not a stage 'subsequent' to federal habeas" for purposes of

funding under §3599(e). *Harbison*, 556 U.S. at 189. This holding is not

predicated or dependent on actual temporal order of events in a particular case,

but on the "order of proceedings contemplated by the statute." *Id.* at 190. As

noted by the Court in *Harbison*, §3599(e) was organized "to mirror the ordinary

course of proceedings for capital defendants." *Id.* at 188.

Federal funds are simply not available to state court prisoners pursuing

relief in a subsequent state writ application. *See also Swearingen v. Davis,* No.

4:09-cv-0300, Order, ECF No. 53 at 9–12 (S.D. Tex., Jun. 12, 2019) (denying

funding for a successive habeas action under Texas Code of Criminal Procedure

article 11.073 because it is not "meaningfully different than a traditional state

habeas proceeding which the Supreme Court found does not fall within section

3599(e)'s authorization"). As the federal court noted in *Swearingen*, federal

funds for expert assistance are only available for proceedings within the scope

of the lawyer's appointment. *Id.* at 10 (citing *Gary v. Warden*, 686 F.3d 1261,

1272 (11th Cir. 2012)). Thus, the central question before this Court is whether this request exceeds the scope of counsel's appointment.

As *Harbison* makes clear, clemency is within that scope, which is why Sparks relies upon it. But as *Harbison* also makes clear, and is supported by *Gary* and *Swearingen*, previously undeveloped DNA and other forensic matters requiring state court litigation exceed counsel's appointment. The only other known exception to this rule is competency to be executed. *Battaglia v. Stephens*, 824 F.3d 470 (5th Cir. 2016). But that claim is exceptional because of its ripeness requirement. *Stewart v. Martinez-Villareal*, 523 U.S. 637, 645 (1998) (holding that competency to be executed claim was not successive because it did not become ripe until the petitioner's execution date was set); *Green v. Thaler*, 699 F.3d 404, 410 n.3 (5th Cir. 2012). The matter pressed here, Spark's alleged intellectual disability, seventeen years after *Atkins v. Virginia*, 536 U.S. 304 (2002) does not suffer from a ripeness problem. Sparks's funding request is closer to the denied requests in *Gary* and *Swearingen*, a neglected claim with significant procedural issues.

Further, as detailed below, Sparks has already filed one abusive petition with the benefit of federally funded counsel during a stay and abatement of these proceedings. *Ex parte Sparks*, WR-76,786-02, Ord. (Tex. Crim. App. May 14, 2014). This only heightens the bar for Sparks to prove his claim was unavailable to the state courts. And it means this Court has already paid for

one round of futile state court litigation. These are piecemeal litigation tactics and, as such, this Court should deny Sparks's request for further funding.

## II. Regardless, Sparks Cannot Demonstrate the Reasonable Necessity of the Requested Funds as Required by the Statute.

Even assuming that federal funds were available for state habeas proceedings, there is no justification to authorize them here. Under the statute, funding for expert assistance is permitted only where the petitioner demonstrates that the "services are reasonably necessary for the representation of the defendant." 18 U.S.C. § 3599(f). The Supreme Court recently explained in *Ayestas v. Davis*, that "[a] natural consideration informing the exercise of [the district court's] discretion is the likelihood that the contemplated services will help the applicant win relief." 138 S.Ct. 1080, 1094. To that end,

> [p]roper application of the "reasonably necessary" standard thus requires courts to consider the potential merits of the claims that the applicant wants to pursue, the likelihood that the services will generate useful and admissible evidence, and the prospect that the applicant will be able to clear any procedural hurdles standing in the way.

*Id*. Sparks's bid for funding falls short because he fails to establish that that there is any likelihood that he would succeed on the merits of his claim.

First, Sparks is incorrect that a change in law permits him to file another subsequent state habeas application. The legal basis for Sparks's claim was

available to the applicant not only when he filed his original writ application but, as his motion admits, at the time of trial. Mot. Fund, ECF No. 66 at 4. It is in *Atkins v. Virginia*, 536 U.S. at 321, that the Supreme Court prohibited the execution of the intellectually disabled. Despite Sparks's assertions to the contrary, this rule was unchanged by *Moore v. Texas*, 137 S. Ct. 1039 (2017).

When the Supreme Court decided *Atkins*, it did not offer a legal definition of intellectual disability, nor did it mandate the use of any particular medical guideline in determining intellectual disability. In *Hall v. Florida*, 572 U.S. 701, 710 (2014), the Court provided that "[t]his Court, state courts, and state legislatures consult and are informed by the work of medical experts in determining intellectual disability[.]" The Court then observed that "the medical community defines intellectual disability according to three criteria: significantly subaverage intellectual functioning, deficits in adaptive functioning (the inability to learn basic skills and adjust behavior to changing circumstances), and onset of those deficits during the developmental period." *Id*. at 710. But, as in *Atkins*, the Supreme Court did not mandate the use of any particular medical guideline in determining intellectual disability. In *Moore*, the Supreme Court affirmed its prior holding in *Hall* that the habeas court use the most recent medical guidelines in determining intellectual disability. 137 S. Ct. at 1049. And, as in *Atkins* and *Hall*, the Court in *Moore* did not mandate the use of any particular medical guideline in determining

intellectual disability. Thus, *Moore* did not create a new constitutional right. All *Moore* did was abrogate the Court of Criminal Appeals's (CCA's) decision in *Ex parte Briseno*, 135 S.W.3d 1 (Tex. Crim. App. 2004). The CCA was reversed for not employing "the intellectual-disability guides currently used in the medical community" and for employing "the 1992 guides adopted by the CCA in *Ex parte Briseno*," and for relying upon "superseded medical standards." *Moore*, 137 S.Ct. 1044, 1048, 1053. But the error Texas courts made in relying on *Briseno* does not apply in this case because as he admits, Sparks has never raised an intellectual disability claim.

Since *Moore* was rendered, the CCA has authorized subsequent writs and stays of execution wherein the claimants raised claims that *Moore* was new law. *See Ex parte Guevara*, No. WR-63,926-03, 2018 WL 2717041 (Tex. Crim. App. Jun. 6, 2018) (not designated for publication); *Ex parte Milam*, No. WR-79,322-02, 2019 WL 190209 (Jan. 14, 2019) (not designated for publication). But these cases are distinguishable in that the applicants had long claimed to be intellectually disabled but their claims were denied with the use of the verboten *Briseno* factors. In *Guevara*, the claimant raised an *Atkins* claim in his initial writ application filed in 2006 but the CCA denied the applicant's claim after subjecting it to *Briseno* analysis. *Ex Parte Guevara*, 2018 WL 2717041 at *1. Thus, the CCA found that, because it had used *Briseno* to decide the applicant's original claim, *Moore* was new law as applied to the

applicant, entitling the applicant to a review of his intellectual disability claim on the merits. *Id*.

In *Milam*, the applicant received a jury charge regarding intellectual disability, and the jury charge incorporated the *Briseno* standards. 2019 WL 190209 at * 1 (Richardson, J., concurring). No objection to the *Briseno* standard was raised at trial, on direct appeal, or in the initial writ application. *Id*. Because *Briseno* was used by the jury to decide the issue of intellectual disability, the CCA held that *Moore* was new law as applied to the applicant, entitling him to a review of his intellectual disability claim on the merits. 2019 WL 190209 at *1.

But *Moore* is not new law as applied to Sparks. This case is similar to the dismissed subsequent writ in *Ex parte Johnson*, No. WR-73,600-02 (Tex. Crim. App. Apr. 29, 2019). Just like Johnson, Sparks's jury was not instructed on intellectual disability, and therefore was not instructed consistent with *Briseno*. And like Johnson, Sparks did not argue he was intellectually disabled on direct appeal, and no appellate claim was decided under *Briseno*. Finally, again like Johnson, Sparks did not claim he was intellectually disabled in his initial state habeas application, and therefore he did not have a prior writ claim decided under *Briseno*. This case is free of any *Briseno* contamination. Because *Briseno* has never been applied to the applicant, *Moore* is not new law. Thus, Sparks cannot meet the requirements of art. 11.071, §5(a)(1).

Additionally, Sparks has a problem that Johnson did not. This Court stayed and abated proceedings so that Sparks could raise unexhausted claims before the state courts. Despite his efforts, the CCA determined that this subsequent petition was abusive. *Ex parte Sparks*, WR-76,786-02, Ord. (Tex. Crim. App. May 14, 2014). Thus, Sparks must demonstrate that his claim was not only unavailable at the time he filed his original writ but also at the time he filed his abusive second petition. This abusive petition presents an insurmountable problem for Sparks because, as shown above, he cannot rely on the Supreme Court's decision in *Moore*, but he also cannot rely on the publication of the DSM-5, which was published in 2013, before he filed his subsequent state writ in 2014. ROA.1098; *Ex parte Sparks*, WR-76,786-02, at 54.

Thus, what Sparks is asking for is for this Court to provide funding for him to prove an intellectual disability claim that he has slept upon. In *Ex parte Blue*, 230 S.W.3d 151, 154 (Tex. Crim. App. 2007), the CCA held that, "[T]he applicant may proceed with an *Atkins* claim if he is able to demonstrate to this Court that there is evidence that could reasonably show, to a level of confidence by clear and convincing evidence, that no rational finder of fact would fail to find that he is mentally retarded." But Sparks does not show he is likely to meet "heightened-threshold" burden of proof or even that it is possible to do so. *Id.*

In requesting funding, Sparks relies upon his score of 75 received at the time of trial when he was 34 and already had motivation to malinger. Even assuming the standard error of measurement, Sparks did not have one expert who testified he was intellectually disabled. All Sparks has is record evidence of alleged adaptive deficits and a borderline IQ score from the time of trial. Now he wants money to go expert shopping in hopes that he can find an expert to diagnose him as intellectually disabled. The federal court should not fund this shopping spree.

Additionally, this Court should not grant Sparks funding because he presents no viable state or federal claim. As explained above, it is likely that, should this Court grant funding and should Sparks file a subsequent application, the state courts will deem it an abuse of the writ. But the federal courts are also precluded from considering Sparks's claim. Sparks would need to file and meet the requirements for a successive petition. 28 U.S.C. § 2244 (West 2019). This he cannot do because the Supreme Court has held that while *Moore* is a new rule of constitutional law, it is not retroactive. *Shoop v. Hill*, 139 S. Ct. 504 (Jan. 7, 2019) (per curiam). And the Fifth Circuit may not authorize a successive *Atkins* claim under § 2244(b)(2)(B). *In re Webster*, 605 F.3d 256, 258-59 (5th Cir. 2010) (reading § 2255 in pari materia with § 2244 and holding that petitioner could not bring successive Atkins claim based on

newly discovered evidence because such a claim and evidence would not negate his guilt of the underlying offense).

Finally, Sparks's belief that he cannot file his subsequent state habeas proceeding until the Supreme Court denies his certiorari petition is in error. Mot. Fund, ECF No. 66, at 3. It is true that the Texas courts have long subscribed to the what has been called the "*Powers* abstention doctrine" and "the two-forum rule." *Ex parte Soffar*, 143 S.W.3d 804, 805 (Tex. Crim. App. 2004). The doctrine was a judicially created policy based on comity which "teaches that one court should defer action on causes properly within its jurisdiction until the courts of another sovereignty with concurrent powers, and already cognizant of the litigation, have had an opportunity to pass upon the matter." *Id*. at 805-06. But the two-forum rule would not be invoked here. First, no federal court currently has jurisdiction over Sparks's federal habeas proceedings. The Supreme Court's jurisdiction would only be invoked if certiorari is granted. Second, as Sparks admits he has not previously raised an *Atkins* claim so this matter is not before any federal court. Sparks provides no citations to cases in which the two-forum rule has been invoked while a certiorari petition is pending, much less any in which last-minute litigation before an execution.

Because he fails to demonstrate any likelihood that he will succeed on the merits of his *Atkins* claim, Sparks cannot demonstrate that the funds he

requests are reasonably necessary as set out under § 3599(e). As such, there is no basis upon which to grant his motion.

## CONCLUSION

For the reasons set out above, the Director respectfully requests that this Court deny Sparks's motion to authorize federal funds for expert assistance to support a subsequent state writ application.

Respectfully submitted,

KEN PAXTON
Attorney General of Texas

JEFFREY C. MATEER
First Assistant Attorney General

LISA TANNER
Acting Deputy Attorney General
for Criminal Justice

EDWARD L. MARSHALL
Chief, Criminal Appeals Division

_s/ Ellen Stewart-Klein_
ELLEN STEWART-KLEIN
Assistant Attorney General
State Bar No. 24028011

Office of the Attorney General
Criminal Appeals Division
P. O. Box 12548, Capitol Station
Austin, Texas 78711-2548
ellen.stewart-klein@oag.texas.gov

Telephone: (512) 936-1400
Facsimile: (512) 320-8132

ATTORNEYS FOR RESPONDENT

## CERTIFICATE OF SERVICE

I hereby certify that on August 15, 2019, I electronically filed the foregoing document with the clerk of the court for the United States District Court, Northern District of Texas, using the electronic filing system of the court. The electronic case filing system sent a "Notice of Electronic Filing" to the following attorney of record who has consented in writing to accept this Notice as service of this document by electronic means:

Seth Kretzer
The Lyric Center
440 Louisiana Street, Suite 200
Houston, Texas 77002
seth@kretzerfirm.com

Jonathan Landers
917 Franklin, Ste. 300
Houston, Texas 77002
Jlanders.law@gmail.com

 s/ Ellen Stewart-Klein
ELLEN STEWART-KLEIN
Assistant Attorney General